UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-08-219 |
| | § | |
| MARIA GUADALUPE VILLA; dba EL | § | |
| TIBURON NIGHT CLUB, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Pending before the Court is the plaintiff J&J Sports Productions, Inc.'s ("JJSP") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The defendant, Maria Guadalupe Villa ("Villa"), did not submit a response to this motion. Having carefully considered the parties' submissions, the record, and the applicable law, the Court hereby GRANTS the plaintiff's motion for summary judgment.

## II.    FACTUAL BACKGROUND

JJSP is a broadcast licensee of sporting events including, but not limited to, the January 21, 2006 boxing match between Erik Morales and Manny Pacquiao (the "Event") with its principal office and place of business located in California. Villa is an owner and manager of El Tiburon Night Club (the "Establishment") located in Houston, Texas with the right and ability to supervise its activities. JJSP was authorized to sub-license the telecast of the Event, including preliminary fights, at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, and restaurants throughout the State of Texas. Pursuant to such authority, it marketed and distributed the closed-circuit rights granted to it and, through its agents, contracted with various

establishments and provided them with the right to broadcast the Event for a fee.  The circulation of the Event was never intended for the use of the general public and could only be exhibited in a commercial establishment that was contractually authorized by JJSP.

In order to safeguard against the unauthorized interception or receipt of the Event, the interstate satellite transmission was electronically coded or "scrambled."  Thus, any closed-circuit locations that contracted with JJSP were provided with the electronic decoding capability or satellite coordinates necessary to receive the signal to broadcast the Event.  The transmission of the Event was available for Villa to purchase and receive the right to display it at the Establishment.  However, Villa did not contract with JJSP or any of its agents to obtain the rights to broadcast it.

After the Event aired on January 21, 2006, JJSP learned from an investigator that Villa intercepted and circulated it to the patrons present at the Establishment.  On January 18, 2008, JJSP filed suit against Villa, alleging that she willfully infringed upon its exclusive right to transmit the Event with the express purpose and intent to secure a private financial gain.[1]  On October 29, 2008, Villa filed a Suggestion of Bankruptcy.  The next day, the Court ordered that the case be stayed pending the bankruptcy proceedings and dismissed it without prejudice.  On February 18, 2009, upon JJSP's motion, the Court reinstated the case upon receiving notice of the discontinuance of the stay.

## III.   CONTENTIONS OF THE PARTIES

### A.   The Plaintiff's Contentions

JJSP contends that Villa willfully intercepted or assisted in the receipt of the Event and subsequently transmitted or assisted in transmitting it to patrons at the Establishment without its

---

[1] JJSP further asserts that Villa is a multiple offender of the Federal Communications Act for also pirating the May 19, 2005 fight between Erik Morales and Manny Pacquiao, including the preliminary fights that preceded it.

authorization.  It further asserts that she failed to respond to its request for admissions within thirty days after they were served.  JJSP argues that the admissions establish that Villa willfully exhibited the Event without its authorization for the purpose of securing a private financial gain. Because Villa did not respond to JJSP's request for admissions and does not move for their withdrawal, they should be automatically deemed admitted pursuant to the Federal Rules of Civil Procedure.  Accordingly, JJSP is entitled to summary judgment and an award of any statutory and additional damages as a matter of law.

> **B.    The Defendant's Contentions**

Villa denies that she willfully intercepted and transmitted the interstate communication of the Event or assisted in any such activities.  She further asserts that she did not have any direct control or financial interest in the acts JJSP alleges in its complaint.  Villa also contends that JJSP's claims are barred by the applicable statute of limitations.  Thus, she argues that JJSP is not entitled to any relief for its claims against her.

## IV.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322-25 (1986)).  Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The nonmovant must go

beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251-52).

## V.    ANALYSIS & DISCUSSION

### A.    Federal Communications Act

The Federal Communications Act combats against the piracy of radio and television signals. *See, e.g.*, 47 U.S.C. §§ 553, 605. Section 553(a)(1) provides that "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so." *Id.* § 553(a)(1); *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001). "The legislative history associated with *section* 553 and the amendments to *section* 605 reveals that one of Congress's principal objectives was to discourage theft of cable services." *Prostar*, 239 F.3d at 673 (citing *Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 961 (N.D. Ill. 2000)). Thus, Congress

formulated a variety of penalties and remedies to "protect the revenue of television cable companies from unauthorized reception of their transmissions." *Id.* & n.18 (quoting *Boom Town Saloon, Inc.*, 98 F. Supp. 2d at 961 (quoting *Time Warner Entm't/Advance-Newhouse P'ship v. Worldwide Elec., L.C.*, 50 F. Supp. 2d 1288, 1293 (S.D. Fla. 1999))).

JJSP moves this Court to admit its request for admissions that were served upon Villa and never responded to within thirty days. It contends that the admissions substantiate that the Establishment exhibited the Event, including preliminary fights, without obtaining its authorization to broadcast it. Moreover, JJSP asserts that they prove that Villa's actions were willful and committed for the purpose of receiving a private financial gain. Thus, it argues that it has submitted sufficient evidence to warrant summary judgment against Villa on its claims for relief.

A matter in a request for admissions is admitted unless the party to whom the request is made answers or objects to it within thirty days. FED. R. CIV. P. 36(a); *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991). Any matter admitted under Rule 36 is conclusively established unless the court, on motion, permits a withdrawal or an amendment of the admission. FED. R. CIV. P. 36(b); *Hulsey*, 929 F.2d at 171. Villa failed to make any objections to any of the questions contained in JJSP's request for admissions within thirty days of being served with them. She further neglects to make a motion to have them withdrawn or amended. Accordingly, the Court declares that the matters in JJSP's request for admissions are automatically deemed admitted in accordance with Rule 36.

The Court finds that Villa's admissions show that she intercepted the Event's signal in violation of section 553 of the Federal Communications Act. Villa was an owner of the Establishment with the authority to supervise any activities present, including the receipt of

telecommunications. Given that commercial establishments could only obtain permission to distribute the Event by entering into a contract with JJSP, she would not be able to legally circulate it in her Establishment unless she entered into an agreement with JJSP to distribute it. The record does not contain any evidence that Villa attempted to enter into an agreement with JJSP to broadcast it at the Establishment. Thus, Villa could have only obtained it by using some unauthorized action to intercept it. Moreover, she does not refute JJSP's allegations that she willfully intercepted or assisted in receiving the Event without its authorization for the purpose of obtaining a private financial gain from its dissemination at the Establishment as evidenced by her deemed admissions. Hence, there are no genuine issues of material fact to resolve with respect to whether Villa's conduct violated the Federal Communications Act. Accordingly, the Court declares that JJSP is entitled to summary judgment as a matter of law on its claim under section 553.[2]

### B.    Damages

JJSP contends that it is entitled to statutory damages in the amount of $10,000 and additional damages in the amount of $50,000 from Villa as provided under section 605 of the Federal Communications Act. Section 605 permits recovery of statutory damages for a sum of not less than $1,000 or more than $10,000 as the court determines to be appropriate. 47 U.S.C. § 605(e)(3)(C)(i)(II). If the court finds that a violation of section 605 was "committed willfully and for purposes of commercial advantage or private financial gain," the court may, in its discretion, increase the award of damages by an amount of not more than $100,000. *Id.* §

---

[2] In her answer, Villa contends that JJSP's claims are barred by the statute of limitations because its complaint was filed more than two years after the events took place. However, the Fifth Circuit held that the three-year statute of limitations period articulated in the Copyright Act is the proper limitations period to govern claims brought under the Federal Communications Act. *Prostar*, 239 F.3d at 678. JJSP's complaint cites two fights between Erik Morales and Manny Pacquiao that occurred on May 19, 2005 and January 21, 2006 as the specific events in which Villa violated the Federal Communications Act by broadcasting them within the Establishment without its authorization. These fights occurred within three years of when JJSP filed suit against her on January 18, 2008. Accordingly, the Court holds that JJSP's claims are not time barred by the applicable limitations period.

605(e)(3)(C)(ii).  The determination of the total amount of damages awarded under section 605 is within the court's discretion.  *Id.* § 605(e)(3)(C)(i)(II).

The record establishes that Villa willfully intercepted or assisted in intercepting and receiving the Event for the purpose of obtaining a private financial gain.  Furthermore, JJSP presents uncontroverted evidence concerning the appropriate amount of damages suffered from Villa's conduct.  Marcial Solis ("Solis"), the investigator present at the Establishment, stated in his affidavit that he paid a cover charge of five dollars to enter the Establishment.  Solis also noted that he counted between seventy and eighty people inside the Establishment on the night of the Event.  Moreover, the record shows pictures of signs promoting the Event outside the Establishment's location.  Thus, there is evidence that Villa sought to earn profits that would be associated with airing the Event to patrons visiting the Establishment.

In addition to this evidence, JJSP submitted the affidavit of Thomas Riley ("Riley") regarding the loss of sub-license fees.  Riley stated that authorized commercial establishments that contracted with JJSP were required to pay a sub-license fee to receive the Event that was based on the contracting establishment's maximum occupancy.  He further claimed that the sub-license fee was the equivalent of twenty times the maximum occupancy of the purchasing commercial establishment.[3]  Solis noted in his affidavit that he discovered that the Establishment held a maximum occupancy of one-hundred people during his investigation.  Thus, Villa would be required to pay a sub-license fee of approximately $2,000 if she agreed to purchase the Event from JJSP.

The deterrence of future violations is one of the objectives of section 605, as is apparent from the minimum award of $1,000.  *Entm't by J&J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d

---

[3] For example, a commercial establishment with a maximum occupancy of one-hundred and fifty patrons would be required to pay a sub-license fee of $3,000.

769, 776 (S.D. Tex. 2002). Here, Villa's actions present the potential to severely harm JJSP's ability to provide quality service to its customers. As stated in Riley's affidavit, JJSP's continued viability depends upon the willingness and ability of commercial establishments to pay sub-license fees for the right to broadcast closed-circuit programs with the understanding that this programming is not available to the general public. Such establishments would find no reason to pay such fees in order to legally broadcast these programs from JJSP if they were made available to other businesses without prior authorization. Given the summary judgment record establishing Villa's willful conduct and the evidence in support of damages, the Court finds that JJSP is entitled to statutory and additional damages in the amount of $10,000 and $50,000, respectively.

### C.    Attorney's Fees

JJSP contends that it is entitled to attorney's fees incurred for prosecuting this lawsuit. It submits the affidavit of its counsel, Andrew R. Korn ("Korn"), in support of this argument. Korn asserts that a one-third contingency fee is reasonable for the prosecution of this case through final judgment. He further states that this fee reflects the amount customarily charged for the same or similar services by an attorney with comparable experience, reputation, and ability as him. Moreover, Korn claims that he also considered the nature of the controversy, the time dedicated to prosecuting this case, and the results obtained in similar cases. Villa does not submit a challenge to Korn's proposal for attorney's fees. Accordingly, the Court finds that JJSP's request for attorney's fees is reasonable and orders an award in the amount of $20,000 or one-third of its damages award and court costs as permitted by statute.

## VI.    CONCLUSION

Based on the following, the Court hereby GRANTS JJSP's motion for summary judgment and ORDERS Villa to pay an award of $10,000 in statutory damages and $50,000 in additional damages.    The Court further ORDERS Villa to pay JJSP attorney's fees in the amount of $20,000.

SIGNED and ENTERED this 31st day of March, 2009.

_____
Kenneth M. Hoyt
United States District Judge